IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Regina Clemmer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-cv-3695 |
| | ) |
| Timothy Evans, in his official | ) |
| capacity as Chief Judge of the | ) |
| Circuit Court of Cook County | ) |
| | ) |
| Defendant. | |

Memorandum Opinion and Order

The Office of the Chief Judge of the Circuit Court of Cook County ("OCJ") employs Plaintiff Regina Clemmer as an Official Court Reporter at the Leighton Criminal Courts building, located at the intersection of 26th Street and California in Chicago. ECF No. 154 ¶¶ 2-3. After Ms. Clemmer reportedly experienced bullying and harassment at the hands of her co-workers, she initiated the instant action against Defendant Timothy Evans in his official capacity as Chief Judge of the Circuit Court of Cook County, alleging sex discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2, 2000e-3. Judge Evans now moves for summary judgment in his favor [140]. For the following reasons, the motion for summary judgment is granted.

I.

Ms. Clemmer, who is Black and female, has been employed as an Official Court Reporter since 1995 and assigned to the Leighton Criminal Courts building since 2006. ECF No. 154 ¶¶ 1, 3. The Leighton courthouse is a high-volume courthouse, which makes it a desirable place for court reporters to work because they stand to make money selling a high volume of transcript pages. *Id.* ¶ 4.

Ms. Clemmer testified that over a period of years, she was bullied and harassed by a group of female, majority-Black court reporters and administrators known throughout the office as "the Family," which included Vernita Halsell-Powell, Maggie Perez, Sharon Thompson, Jamie Mitchell, Faye Montgomery, Pam Terry, and Doris Moseberry.[1] *Id.* ¶ 22; *see* ECF No. 143-3 at 10-11; ECF No. 143-11 at 23-24. The Family's alleged bullying behavior included a pervasive practice of calling Ms. Clemmer names such as "bitch" and "BFF," physically touching or pushing Ms. Clemmer, and blocking her path through the courthouse. *See, e.g.*, ECF No. 154 ¶¶ 6, 16.

Ms. Clemmer testified that her relationships with certain members of "the Family" had soured years earlier. For example, she claimed that her relationship with Ms. Moseberry suffered in 2009 or earlier when Ms. Clemmer refused to give Ms. Moseberry

---

[1] Ms. Clemmer initially sued Doris "Mooseberry," ECF No. 50, but both parties now refer to her as Ms. "Moseberry." As the parties seem to have agreed, I will also refer to her as Ms. Moseberry for instant purposes.

2

money to complete her monthly vouchers. ECF No. 143-3 at 29-30. Around the same time, she claims she and Ms. Montgomery had a falling out because Ms. Clemmer refused to trade courtrooms with her. ECF No. 154 ¶ 19. Ms. Clemmer also explains that her issues with Ms. Terry began in November 2015 when Ms. Terry accused Ms. Clemmer of (1) stating that Springfield did not have sufficient funds for their supervisor to sign their vouchers, and (2) "making inappropriate statements regarding Keisha LeFlore," a co-worker. *Id.*; ECF No. 143-3 at 11-12.

As early as 2009 or 2010, Ms. Clemmer claimed she verbally reported that Ms. Montgomery had been bullying her to Marilyn Filishio, Director of Official Court Reporters; Pamela Taylor, Ms. Clemmer's then-supervisor; and Jeanie LaMantia-Potter, then another supervisor. ECF No. 143-3 at 22; ECF No. 143-5 at 5; ECF No. 143-11 at 4.[2] Ms. Clemmer claims she was told to "ignore" the conduct. ECF No. 143-3 at 22. After a December 11, 2014 meeting for all court reporters regarding racism and bullying in the office, Ms. Clemmer testified that she also reported to Supervisor Brenda Hayes that she was experiencing bullying. ECF No. 143-2 at 17. She did not, however, specifically mention that she was being bullied on the basis of her sex. *Id.*

---

[2] Ms. Filishio denies that Ms. Clemmer complained to her at this time. ECF No. 143-5 at 9.

3

Ms. Clemmer claims that she spoke to Brenda Hayes again in April 2016 about how Ms. Terry was striking and shoving her, stepping on the heel of her shoe while walking, and standing and blocking her path. ECF No. 154 ¶ 16. Again, she did not specifically bring up sex discrimination, but she did report that she was being repeatedly called "bitch." ECF No. 143-2 at 17. Ms. Hayes did not elevate Ms. Clemmer's complaint to her supervisors at that time, but Ms. Hayes may have "spoke[n] to the individuals involved." ECF No. 143-11 at 10.

On September 12, 2016, Ms. Clemmer describes that Ms. Terry, Ms. Moseberry, and Ms. Montgomery surrounded her at Ms. Moseberry's desk, screaming at her, putting their "fingers . . . in [her] face," and towering over her so she could not escape. ECF No. 143-3 at 9. Ms. Clemmer immediately made a verbal complaint to Ms. Potter, Executive Assistant for the Official Court Reporters, over the phone regarding those three individuals. ECF No. 143-9 at 4; ECF No. 143-11 at 4. During that phone call, she also relayed that she had "been bumped by Ms. Terry while walking down the hall, blocked when coming through the hall and called 'bitch' or 'fucking bitch' in an open office environment on more than 40 occasions over the past year." ECF No. 143-9 at 4. In addition to the three women involved in the September 12, 2016 incident, she named the other members of "the Family" as part of the same problematic group. *Id.* At Ms. Potter's request, Ms. Clemmer also

4

submitted a written complaint later the same day. ECF No. 154 ¶ 19.

Following Ms. Clemmer's September 12, 2016 complaint, the OCJ initiated two parallel investigations--one conducted by Ms. Potter regarding the allegations of bullying in violation of the Code of Conduct, and one by Keith Sevcik, Labor and Employment Counsel for the OCJ, into whether Ms. Clemmer's co-workers had created a hostile work environment based on race. ECF No. 154 ¶ 27. While the investigation was pending, Ms. Powell, Ms. Mitchell, Ms. Terry, and Ms. Moseberry were temporarily transferred out of the Leighton courthouse effective September 19, 2016. ECF No. 143-15 at 1-3; ECF No. 143-31 at 4. Ms. Montgomery provided notice on September 14, 2016 that she would retire effective October 1, 2016 and was not transferred. ECF No. 143 ¶ 26; ECF No. 154 ¶ 26. However, Ms. Terry, Ms. Montgomery, and Ms. Moseberry did not bully Ms. Clemmer again after the September 12, 2016 complaint. ECF No. 154 ¶ 10.

In connection with the investigation, Ms. Clemmer was interviewed on September 23, 2016. ECF No. 143-9 at 4. In her interview, she reported that Ms. Terry "called her 'bitch' and 'fucking bitch' constantly." *Id.* She also characterized "the Family" as "racist," having called white court reporters "honkeys" that they did not want "on their side of the office." *Id.* She said the Family was "hard on blacks" such as herself that they

5

felt were "not black enough," because, for example, they associated with white court reporters. *Id.* At the end of her interview, she provided the interviewers with the names of individuals she believed would corroborate her complaint, and the investigators interviewed those individuals and any others those individuals discussed. ECF No. 154 ¶ 30.

Ms. Clemmer's complaints were corroborated by the other interviewees, and in December 2016, the OCJ found that Ms. Mitchell, Ms. Terry, Ms. Powell, and Ms. Moseberry had engaged in racial bullying and created a hostile work environment. ECF Nos. 143-22, 143-23, 143-24, 143-25. Those employees were suspended for 10 to 20 days and their transfers made permanent. ECF No. 143 ¶¶ 40-42, 44; ECF No. 154 ¶¶ 40, 42, 44; ECF No. 143-28 at 5. Ms. Perez was "verbally cautioned regarding retaliation and remaining professional in the workplace," but was not transferred because there were no allegations directly pertaining to her, and Ms. Clemmer stated to the investigators that she had no issue with Ms. Perez. ECF No. 143 ¶ 43; ECF No. 154 ¶ 43.

Ms. Clemmer's relationship with Ms. Perez deteriorated shortly thereafter, however. On December 22, 2016, Ms. Clemmer says that as she was returning to her office, Ms. Perez locked her out so that Ms. Clemmer had to be let into her office by another court reporter. ECF No. 143-2 at 21. Ms. Clemmer immediately called Ms. Potter to report the incident, who, according to Ms.

6

Clemmer, suggested that Ms. Perez could be reacting to the fact that the investigation into "the Family" had concluded and urged Ms. Clemmer to go home for the day. *Id.*

Ms. Clemmer contends that after that initial incident in December 2016, in retaliation for complaining to her superiors about discrimination, Ms. Perez harassed her on an ongoing basis by calling her names and verbally threatening her. ECF No. 154 ¶ 54. She claims that Ms. Perez called her "bitch" repeatedly and lurked outside her office door making faces. *See* ECF No. 143-2 at 22; ECF No. 143-3 at 199-200. She testified also that Ms. Perez threatened her by stating, "You must not know I'm Puerto Rican," ECF No. 154 ¶ 55, and tried to run her over with her car on more than one occasion in the parking garage, ECF No. 143-3 at 199. Ms. Clemmer says she reported these incidents to supervisors Brenda Hayes, Sharita Chancellor, and Janet Hartnett, as well as to Ms. Potter and Ms. Filishio. ECF No. 143-2 at 23.

Ms. Clemmer filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") on March 10, 2017 alleging she was harassed in late 2016 by Ms. Terry, Ms. Montgomery, and Ms. Moseberry on the basis of her sex. ECF No. 143-36.

On May 23, 2017, Ms. Perez submitted an internal written complaint asserting that Ms. Clemmer had "lunged" at her in connection with a misunderstanding about a birthday party. *See* ECF No. 143-32 at 1-2. Three days later, Ms. Perez filed a Petition

7

for Stalking No Contact Order against Ms. Clemmer. ECF No. 154 ¶ 46. In the petition, she complained that Ms. Clemmer named her in the racial harassment and bullying investigation, and also "whispered about [her] to another reporter" and then "made a gesture with her body & gave [her] a dirty look" in December 2016. ECF No. 143-34 at 1. While the petition for the no-contact order was pending, Ms. Perez was temporarily transferred out of the Leighton courthouse. ECF No. 143 ¶ 47; ECF No. 154 ¶ 47. At a meeting on June 6, 2017 with Ms. Potter and Ms. Filishio, Ms. Perez stated that she filed the petition "so she wouldn't be removed from 26th Street and Regina [Clemmer] would." ECF No. 143-30 at 4. Ms. Perez failed to show up to court on her order for protection and the petition was dismissed. ECF No. 154 ¶ 47.

Ms. Clemmer also contends that Ms. Potter and Ms. Filishio threatened her twice--once on June 7, 2017, and once on May 15, 2018--that if she made any more complaints about Ms. Perez, she would be removed from the Leighton courthouse. ECF No. 154 ¶¶ 50-51. Additionally, she claims that she was subjected to an adverse employment action when she took three days off from May 16-18, 2018 and Ms. Potter advised that she needed to disclose her medical ailment to substantiate the time off. ECF No. 154 ¶¶ 52-53. Ms. Clemmer was eventually paid for that time. ECF No. 154 ¶ 53.

Ms. Clemmer filed a second charge of discrimination with the IDHR and Equal Employment Opportunity Commission ("EEOC") on

8

January 24, 2018 alleging that Ms. Perez was subjecting her to ongoing harassment on the basis of her sex and retaliating against her for filing her previous charge of discrimination. ECF No. 143-37.

## II.

In Count I, Ms. Clemmer asserts that she was subjected to a hostile work environment based on her sex. "A hostile work environment claim contains four elements: (1) the employee was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII--here, [sex]; (3) the harassment was so severe and pervasive that it altered the conditions of employment and created a hostile or abusive working environment; and (4) there is a basis for employer liability." *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019). Judge Evans here challenges that Ms. Clemmer has established the second and fourth elements.

I first address whether the harassment at issue was sex-based. Ms. Clemmer testified that she was repeatedly called a "bitch" by members of "the Family." *See, e.g.*, ECF No. 154 ¶ 6. The word "bitch" is "gender-specific, and it can reasonably be considered evidence of sexual harassment" when viewed in context. *Passananti v. Cook County*, 689 F.3d 655, 666 (7th Cir. 2012). However, Ms. Clemmer "can't win simply by proving that the word was uttered." *Smith*, 936 F.3d at 561. Ms. Clemmer must show that

9

the use of the word created a hostile working environment "from both a subjective and an objective point of view." *Id.* (citing *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018)). That is, "[s]he must show not only that a reasonable person would find the workplace hostile or abusive as a result of [the sex-based] slur, but also that [s]he [her]self perceived it that way." *Id.*

Ms. Clemmer founders on the subjective prong of the analysis. Although it is undisputed that Ms. Clemmer was subjected to severe harassment, she does not show that she believed that harassment was based on her sex. There is no evidence she ever complained to management that the harassment she was enduring was gender- or sex-based, even during her interview in the context of the 2016 investigation. Instead, Ms. Clemmer complained that the harassment was racially motivated. *See, e.g.*, ECF No. 143-9 at 4. She also maintains that the harassment began when her interpersonal relationships with members of the Family suffered for reasons unrelated to her sex--for example, when she refused to trade courtrooms with Ms. Montgomery. *See, e.g.*, ECF No. 154 ¶ 19. She admits that Ms. Perez harassed her "in retaliation for complaining about discrimination" instead of due to any sex-based bias. *Id.* ¶ 54. Ms. Clemmer did testify that the Family "only targeted females," but she thought that was because the Family believed they could more easily get away with harassing the female court

reporters at the courthouse, not necessarily because of any sex-based animus. *See* ECF No. 143-3 at 59-60.

"Title VII . . . does not give employees a remedy for workplace abuse unrelated to a protected characteristic." *Smith*, 936 F.3d at 561. Accordingly, Ms. Clemmer needed to "point to evidence . . . that [s]he suffered harm from [sex]-based harassment *that was distinct from* the distress that non-[sex]-based harassment was already causing [her]." *Id.* at 561-62 (emphasis added). Ms. Clemmer failed to make such a showing--she "points to no evidence that [any perceived sex-based discrimination] caused h[er] either additional or different distress" than that which she was already experiencing due to race-based harassment[3] and her interpersonal issues with the Family. *Id.* at 562.

Because I find that there is no evidence Ms. Clemmer had a subjective belief she was harassed based on her sex, I need not consider Judge Evans's other arguments. Summary judgment is granted as to Count I.

### III.

Ms. Clemmer also brings a claim for Title VII retaliation in Count II. She argues that her employer retaliated against her for

---

[3] Ms. Clemmer did not bring a claim for racial discrimination. ECF No. 50 at 3. Nor could she have--"a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

11

complaining about the harassment she was facing and for filing the two charges of discrimination with the IDHR and EEOC. *See* ECF No. 50 ¶ 24. To defeat summary judgment on a retaliation claim, a "plaintiff must prove that [s]he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

Judge Evans argues that Ms. Clemmer did not suffer an adverse employment action. In response, Ms. Clemmer points to three potential adverse employment actions: (1) the hostile work environment itself, which she argues her employer took "part in continuing and perpetuating"; (2) Ms. Filishio's threat that if Ms. Clemmer complained again about Ms. Perez, she would be removed from the Leighton courthouse; and (3) Ms. Potter's request that Ms. Clemmer disclose a medical ailment to substantiate her time off from May 16-18, 2018. *See* ECF No. 153 at 12-13.

"The creation of a hostile work environment can be a form of retaliation." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 n.5 (7th Cir. 2004). However, as discussed above, Ms. Clemmer has not substantiated her claim that she was subject to a hostile work environment under Title VII. Accordingly, she cannot rely on perpetuation of such an environment as an adverse action to support her claim for retaliation. *See, e.g., Harris v. Ashcroft*, 74 F. App'x 669, 673 (7th Cir. 2003) (upholding summary judgment on

12

retaliation claim based on hostile-work-environment adverse action where harassment plaintiff experienced was not tied to her membership in protected class).

Nor can the threat that Ms. Clemmer would be transferred to another courthouse if she made another complaint qualify as an adverse employment action. "Federal law protects an employee only from retaliation that produces an injury." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (citing *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009)). Because they have no effect on compensation or career prospects, threats alone generally do not produce an actionable injury. *Id.* (collecting cases and holding threats of disciplinary action did not constitute adverse employment action); *see also Lewis v. Wilkie*, 909 F.3d 858, 870 (7th Cir. 2018) ("[T]here is ample precedent in this Circuit and in Supreme Court case law supporting the proposition that an adverse action in the Title VII retaliation context must produce a material injury or harm, and that unfulfilled threats do not meet that standard.").

Ms. Potter's request that Ms. Clemmer substantiate her sick leave fares no better--Ms. Clemmer was ultimately paid for her time, so there were no tangible job consequences. *See Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002) ("[Plaintiff's] being required to substantiate that her absences from work were illness-related . . . did not result in tangible

13

job consequences and therefore [is] not [an] adverse employment action[] actionable under Title VII."); see also Beverly v. Kaupas, No. 05 C 6338, 2008 WL 624045, at *16 (N.D. Ill. Feb. 29, 2008) (same).

Because Ms. Clemmer has not established that she was subject to any adverse employment action, summary judgment is granted as to her retaliation claim.

IV.

For the foregoing reasons, the motion for summary judgment [140] is granted.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 23, 2021